IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

JEFFREY GRAY,                       :
                                    :
    Movant/Defendant,             :
                                    :
v.                                  :   Civ. Act. No. 12-507-LPS
                                    :   Cr. Act. No. 07-137-LPS
UNITED STATES OF AMERICA,           :
                                    :
Respondent/Plaintiff.               :

### MEMORANDUM OPINION[1]

Jeffrey Gray. *Pro se* Movant.

Elizabeth L. Van Pelt, Assistant United States Attorney, United States Department of Justice, Wilmington, Delaware. Attorney for Respondent.

August 13, 2015
Wilmington, Delaware

---

[1]This case was originally assigned to the Honorable Joseph J. Farnan, Jr., and was re-assigned to the undersigned's docket on February 16, 2011.

STARK, U.S. District Judge:

## I. INTRODUCTION

Jeffrey Gray ("Movant") filed a timely Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. (D.I. 95; D.I. 103; D.I. 104) The United States ("Government") filed an Answer in Opposition. (D.I. 115) For the reasons discussed, the Court will deny Movant's § 2255 Motion without holding an evidentiary hearing.

## II. PROCEDURAL AND FACTUAL BACKGROUND

The evidence introduced during Movant's trial established the following facts. Starting in 2004, Movant served as the primary distributor of kilogram quantities of powdered cocaine for an individual named Robert Shepherd. (D.I. 115 at 4) Shepherd testified that he and his partner, Bradley Torrence, received cocaine from a source in Texas named "Van," who shipped kilograms of cocaine to Shepherd and Torrence via Federal Express. By 2005, Shepherd and Movant had a "system" or "usual" arrangement for conducting the cocaine transactions, which involved a pre-arranged set of meeting locations, and an established quantity for their "usual" deal – three kilograms of cocaine – at a set price of $20,000 per kilogram. *Id.* This arrangement continued until the spring of 2006, when Shepherd's supply of cocaine from Van dried up. *Id.* at 5.

Shepherd's partner in the drug conspiracy, Torrence, also testified that he knew Movant was one of Shepherd's major cocaine distributors, and that he twice witnessed Shepherd deliver four kilograms of cocaine to Movant on South Street in Philadelphia in early 2006. (D.I. 115 at 5)

In October 2006, Shepherd was approached by a potential new source of cocaine that Shepherd knew as "Jason," but who was in fact a confidential source working with law enforcement agents. (D.I. 115 at 5) Shepherd arranged to meet "Jason" at an airport hotel in Philadelphia on October 30, 2006, to purchase a large quantity of cocaine. *Id.*

Prior to his meeting with "Jason," Shepherd contacted Movant and arranged for him to deliver the money needed for the cocaine transaction. (D.I. 115 at 5) On October 30, 2006, Movant met Shepherd on South Street in Philadelphia and brought $60,000 for the purchase of three kilograms of cocaine from "Jason." Movant drove Shepherd to the airport hotel and gave Shepherd the money. Shepherd brought the money to "Jason" inside the hotel while Movant waited outside in his car. Shepherd and "Jason" then went to a truck parked in the hotel parking lot (which was monitored by audio and video equipment) in which law enforcement officers had previously set up boxes of sham cocaine. When Shepherd began to examine the kilograms of sham cocaine inside the truck, law enforcement converged. *Id.*

As law enforcement officers moved in to arrest Shepherd and Movant, Movant fled in his car at a high rate of speed through the public hotel parking lot. (D.I. 115 at 6) Several law enforcement agents testified and detailed how Movant sped through the narrow and dark parking lot, crashed through the hotel parking lot fence, and then fled on foot until he was apprehended by agents. *Id.* Law enforcement officers subsequently searched Movant's car and found a loaded and cocked Smith & Wesson 9 mm pistol lying on the passenger floorboard. *Id.*

In October, 2007, Movant was indicted on the following five counts: (1) conspiracy to distribute, and possession with intent to distribute, five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846; (2) attempted possession with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B); (3) possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c); (4) money laundering, in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i) and 2; and (5) possession of a firearm by a person prohibited, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). (D.I. 3) On May 9, 2008,

the Government filed an Information pursuant to 21 U.S.C. § 851 to enhance the statutory penalties set forth in 21 U.S.C. § 841(a)(1) for Counts One and Two of the Indictment. (D.I. 22) On May 20, 2008, a jury convicted Movant of all five counts of the Indictment. (D.I. 30) The Honorable Joseph J. Farnan, Jr., sentenced Movant to 420 months of imprisonment on Count One, followed by a sixty month consecutive term of imprisonment on Count Three, with a lifetime of supervised release to follow. (D.I. 56)

Movant appealed, and the United States Court of Appeals for the Third Circuit affirmed his conviction on September 27, 2010. *See United States v. Gray*, 395 F. App'x 896, 900 (3d Cir. 2010). Movant petitioned the Supreme Court for certiorari, and the Supreme Court denied the petition on April 18, 2011. *See Gray v. United States*, 131 S.Ct. 2138 (2011).

In April 2012, Movant filed the pending § 2255 Motion, followed by two amended § 2255 Motions (hereinafter collectively referred to as "§ 2255 Motion"). (D.I. 95; D.I. 103; D.I. 105) The Government filed a Reply in Opposition. (D.I. 115) Thereafter, Movant filed two Supplemental/Amended Memoranda. (D.I. 118; D.I. 119)

### III. DISCUSSION

Movant timely filed his *pro se* § 2255 Motion. Four claims in the § 2255 Motion assert that defense counsel provided ineffective assistance during the trial and on direct appeal, and one claim asserts that the Government violated the Jencks Act and Federal Rule of Criminal Procedure 26.2 by failing to provide the defense with "Jason's" text messages. The Government contends that all of the claims should be denied as meritless.[2]

---

[2]The Government filed its Answer on May 13, 2013 (D.I. 115), after which Movant filed two separate documents. The first document, filed on April 23, 2014 and titled "Traverse in Response,"

## A. Ineffective Assistance of Counsel Claims

Movant has properly raised his ineffective assistance of counsel allegations in a § 2255 motion. *See Massaro v. United States,* 538 U.S. 500 (2003). As a general rule, ineffective assistance of counsel claims are reviewed pursuant to the two-pronged standard established in *Strickland v. Washington,* 466 U.S. 668 (1984). Under the first *Strickland* prong, Movant must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Id.*

---

constitutes a supplemental memorandum amplifying the claims contained in Movant's § 2255 Motion. (D.I. 118) The Court has considered the assertions contained in this "Traverse" during its review of Movant's § 2255 Motion. The second document, filed on April 28, 2014 and titled "Supplemental Brief," asserts two new claims: (1) Judge Farnan's determination of the drug amount during the sentencing hearing violated his Sixth Amendment right to a jury trial; and (2) Movant is actually innocent pursuant to *Alleyne v. United States,* 133 S.Ct. 2151 (2013), a case that was decided after his direct appeal and after he filed his initial § 2255 Motion. (D.I. 119) These claims do not relate back to Movant's original Motion, because they are entirely new, and were asserted almost one full year after the Government filed its Answer, which is also well-after the expiration of AEDPA's limitations period. *See* Fed. R. Civ. P. 15(a),(c); *Mayle v. Felix,* 545 U.S. 644 (2005); *United States v. Duffus,* 174 F.3d 333, 336-37 (3d Cir. 1999) (finding that new ineffective assistance of counsel claim asserted in motion to amend after AEDPA's limitations period had already expired did not relate back to ineffective assistance of counsel claim asserted in original timely habeas petition); *U.S. v. Thomas,* 221 F.3d 430, (3d Cir. 2000) ("Under Fed. R. Civ. P. 15(c), an amendment . . . clarif[ying] or amplif[ying] a claim or theory in the petition may, in the District Court's discretion, relate back to the date of the petition if and only if the petition was timely filed and the proposed amendment does not seek to add a new claim or to insert a new theory into the case."). As such, these two new claims constitute an untimely amendment to Movant's original timely filed § 2255 Motion, and not, as Movant asserts, a supplement to that Motion. In addition, *Alleyne* is inapplicable to Movant's case, because it has not been made retroactive to cases on collateral review. *See United States v. Reyes,* 755 F.3d 210, 212-13 (3d Cir. 2014). For these reasons, the Court has not considered the two new claims asserted in Movant's "Supplemental Memorandum" (D.I. 119) during its review of the instant Motion.

4

Under the second *Strickland* prong, Movant must demonstrate a reasonable probability that, but for counsel's error, the outcome of the proceeding would have been different. *Id.* at 694; *United States v. Nahodil*, 36 F.3d 323, 326 (3d Cir. 1994). A court can choose to address the prejudice prong before the deficient performance prong, and reject an ineffectiveness claim solely on the ground that the defendant was not prejudiced. *Strickland*, 466 U.S. at 668. Finally, although not insurmountable, the *Strickland* standard is highly demanding and leads to a strong presumption that counsel's representation was professionally reasonable. *Id.* at 689.

### 1. Claim One: Defense Counsel Failed to Obtain an Independent Forensic Expert

During Movant's trial, two DNA experts testified about the DNA found on the firearm that the police recovered from the passenger floor of the automobile driven by Movant during the sting operation on October 30, 2006. First, Michael Cariola, a forensic biologist with Bode Laboratories, explained how Bode issued two reports offering different conclusions regarding the comparison of Movant's DNA with the DNA found on the gun. The first report excluded Movant as the major contributor of the DNA. (D.I. 117 at 62) However, the laboratory technician who performed that first DNA comparison discovered that she had accidently switched the label for Movant's DNA profile with the profile of an individual completely unrelated to Movant's case. (D.I. 117 at 52-59) This technician brought the mistake to the attention of her supervisor, Mr. Cariola. Thereafter, a different laboratory technician at Bode Laboratories performed an entirely new DNA comparison, using an untouched sample of Movant's DNA. During his testimony, Mr. Cariola, who was also the second technician's supervisor, carefully detailed the re-testing procedure and expressed his confidence in the methods and quality controls that were utilized. (D.I. 117 at 59-70) He opined

5

that the results from the second test were reliable and conclusively showed that Movant was the primary contributor of the DNA sample found on the gun. *Id.* Mr. Cariola also explained that a statistical analysis showed the probability of such a match occurring by random chance in the United States African American population was 1 in 52 quadrillion. (D.I. 117 at 47, 71)

The second expert witness who testified for the Government was Carter Cromartie, a forensic biologist at the Bureau of Alcohol, Tobacco, Firearms, and Explosives laboratory. Mr. Carter explained how he compared the DNA found on the firearm to a DNA sample taken from Robert Shepherd, and also explained that the analysis excluded Shepherd as the contributor of the DNA on the firearm. (D.I. 117 at 93-102)

In Claim One, Movant asserts that defense counsel was ineffective for failing to obtain an independent DNA or fingerprint expert to evaluate the DNA on the gun found in the vehicle. Movant believes that Robert Shepherd's prints should have been on the firearm, because the gun was found on the front passenger seat floor after Sheppard had been sitting in the front passenger seat without any gloves on his hands. (D.I. 103 at 9) Movant also contends that defense counsel should have obtained an independent forensic expert to testify about Bode's initial labelling error and its two contradictory DNA reports. Although not entirely clear, Movant appears to assert that an independent forensic expert would have challenged the reliability of Bode's second DNA report.

These arguments do not warrant relief. Deciding whether to call an expert is "fundamentally a strategic choice [made by an attorney] after a thorough investigation of the relevant law and facts." *United States v. Caden*, 2007 WL 4372819, at *4 (E.D. Pa. Dec. 12, 2007). Consequently, an attorney's failure to pursue issues with little chance of success does not constitute ineffective assistance, and a criminal defendant is not prejudiced by counsel's failure to pursue non-meritorious claims. *See*

6

*Strickland*, 466 U.S. at 690. Here, Movant has failed to demonstrate that defense counsel's decision to forego calling an additional, independent forensic expert amounted to an unreasonable tactical decision. To begin, Movant does not provide the name of an expert who would have questioned the reliability of Bode Laboratories' second report regarding Movant's DNA evidence. Notably, Movant's assertions that Bode's initial mislabeling somehow resulted in a fabricated final DNA analysis, and that an additional expert witness would have exculpated him, amount to mere speculation, and are contradicted by the record. For instance, as Mr. Cariola meticulously testified, once the initial labeling error was detected, a different technician from Bode Laboratories conducted a new and thorough subsequent DNA analysis. Defense counsel thoroughly cross-examined Mr. Cariola about the protocols used in the original and second tests. The record is devoid of any evidence of error or tampering with the second analysis, and there is no reason to question the veracity of Mr. Cariola's testimony. Given these circumstances, the Court cannot conclude than an unidentified independent forensic expert would have reached a different conclusion from the one reached in the second report issued by Bode Laboratories.

In addition, Movant does not provide the name of a forensic expert who would have given favorable testimony regarding Shepherd's DNA evidence. Once again, Movant's assertion that Shepherd's DNA should have been found on the gun constitutes mere speculation that is belied by the record. Mr. Cromartie testified that he compared Shepherd's DNA profile to the DNA on the firearm, which demonstrated that the DNA on the firearm did not belong to Shepherd. Movant has not provided, and the record does not contain, any evidence providing a reason to question the accuracy of Mr. Cromartie's analysis and conclusion, or the veracity of Mr. Cromartie's testimony.

Movant also does not provide a reason to believe that an independent forensic analyst would have reached a different conclusion.

Given these circumstances, the Court concludes that Movant has failed to overcome the strong presumption that defense counsel's decision to forego calling an independent forensic expert to testify at trial constituted sound trial strategy.

### 2. Claim Two: Defense Counsel Failed to Inform Movant of Right to Testify

Claim Two asserts that defense counsel provided ineffective assistance by failing to advise Movant of his constitutional right to testify in his own defense. (D.I. 103 at 8; D.I. 105 at 20-21) It is well-settled that "[s]olemn declarations in open court carry a strong presumption of verity" that creates a "formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Here, the transcript reveals that Judge Farnan conducted an extensive colloquy with Movant concerning his right to testify, during which Movant stated that: (1) he had been advised of his constitutional right not to testify; (2) he understood that he had a right to take the witness stand and testify on his own behalf; (3) defense counsel had advised him of these rights; and (4) Movant voluntarily and knowingly chose not to testify during his case. (D.I. 117 at 114-118 (Exh. 8)) Because Movant's unsupported allegations in this proceeding fail to provide compelling evidence as to why the statements he made during his trial should not be accepted as true, the Court concludes that the record belies Movant's contention that defense counsel did not inform him of his right to testify on his own behalf. Accordingly, the Court will deny Claim Two as meritless.

### 3. Claim Four: Defense Counsel Failed to Request Sanctions Against Government for Breaching Witness Sequestration Order

There was a sequestration order in Movant's case where, as explained by Judge Farnan, "a witness should not be discussing their testimony with any other witnesses in any circumstance, and shouldn't have contact with any witness or potential witness under any circumstance." (D.I. 60 at 155) Judge Farnan also explained that, if it was determined by "examination or observation that a witness breached that rule, the [potential] sanctions [include] mistrial or a striking of the testimony." (D.I. 60 at 157)

Shepherd and his partner Torrence were witnesses for the Government. On May 15, 2008, the third day of Movant's trial and the day on which Shepherd and Torrence were scheduled to testify, Shepherd and Torrence were placed in the courthouse holding area with another prisoner named Thomas Smith. (D.I. 103 at 15; D.I. 105 at 12) Movant asserts that, during the return trip to prison at the end of the day, Smith informed Movant that he overheard Shepherd instructing Torrence to corroborate his (Shepherd's) testimony concerning two drug sales to Movant that occurred in January 2006, and that Shepherd also instructed Torrence to say that he and Shepherd split the money as equal partners. (D.I. 103 at 18, 70) The conversation between Shepherd and Torrence occurred after the first half of Shepherd's testimony, but prior to Torrence's testimony.

According to Movant, Smith was willing either to testify about what happened in the holding cell, or provide an affidavit describing the conversation. (D.I. 103 at 18; D.I. 105 at 13) Movant contends that he informed defense counsel about Smith's story, and asked counsel to call Smith to testify so that they could demonstrate that the sequestration order had been violated. Movant asserts that defense counsel refused to call Smith as a witness because counsel believed that

9

"anything Thomas Smith would say was in fact hearsay at best." (D.I. 103 at 17; D.I. 105 at 12) At trial, Torrence testified about two instances in the spring of 2006 when he accompanied Shepherd during a delivery of cocaine to Movant. (D.I. 116 at 110-176)

Now, in Claim Four, Movant contends that counsel provided ineffective assistance by failing to move for an evidentiary hearing to explore the violation of the sequestration order, and for failing to file a motion to exclude Torrence's testimony or for retria.

Courts have "considerable discretion to tailor appropriate remedies" for a violation of a sequestration order. *United States v. Jones*, 48 F. App'x 835, 836 (3d Cir. 2002). A "court may remedy a [sequestration] violation by holding the witness in contempt, by commenting to the jury on the violation and its effect on the weight and credibility of the evidence, or by allowing opposing counsel to cross-examine the witnesses concerning the violation." *Id*. Excluding the witness' testimony or declaring a mistrial is only proper when the defendant suffered actual prejudice as a result of the sequestration violation. *Id*.

In this case, the record reveals that defense counsel thoroughly cross-examined Torrence about the conversation he had with Shepherd in the holding cell. (D.I. 66 at 36-37) Although Torrence admitted that he and Shepherd talked while in the holding cell, he testified that they were not "talking about anything in particular," only "the Lakers game." *Id.* at 37. Torrence specifically denied that Shepherd told him "anything about being up here [in the courtroom], [and] how long he was on the stand," and also explained that he and Shepherd were separated in prison and had not spoken with one another during the two-year period he had been incarcerated prior to Movant's trial. *Id.*

10

The record indicates that defense counsel knew Shepherd and Torrence had testified before the grand jury, and suggests that defense counsel knew the content of their grand jury testimony. (D.I. 20 (sealed)) The Government contends that the testimony Shepherd and Torrence provided to the grand jury was consistent with the testimony they provided during Movant's trial,[3] and nothing in the record provides a reason for the Court to question the Government's contention of consistency.[4] (D.I. 115 at 14) Since the Court has not found any reason to question the contention that Torrence's trial testimony in May 2008 was consistent with the testimony Torrence provided to the grand jury in August 2007, it was highly unlikely that defense counsel could show that any alleged sequestration violation had any material impact on Torrence's trial testimony. When viewed in this context, defense counsel's decision not to file a motion to exclude Torrence's testimony or a motion requesting a retrial was objectively reasonable, as was his decision to pursue the sequestration issue by cross-examining Torrence.

Additionally, Movant cannot demonstrate that he was prejudiced by defense counsel's actions. The general "purpose of sequestration is to prevent witnesses from tailoring their testimony to that of prior witnesses and to aid in detection of dishonesty." *United States v. Collins*, 340 F.3d 672, 681 (8th Cir. 2003). Once again, since Torrence's trial testimony was evidently consistent with the grand jury testimony he had provided months earlier, Movant cannot show that Torrence modified

---

[3] The record does not contain a copy of the grand jury transcript.

[4] Although Movant asserts that Torrence and Shepherd provided false and incriminating testimony to the grand jury regarding his role in certain drug transactions (D.I. 103 at 15), this contention does not address whether Torrence's trial testimony was consistent with his grand jury testimony.

11

his testimony as a result of his contact with Shepherd in the holding cell. Thus, Movant cannot establish a reasonable probability that the result of his trial would have been different but for defense counsel's failure to move for sanctions or an evidentiary hearing.

Accordingly, the Court will deny Claim Four as meritless.

### 4. Claim Five: Defense Counsel Provided Ineffective Assistance on Appeal

In Claim Five, Movant asserts that counsel provided ineffective assistance by filing an appellate brief without obtaining his consent or consulting with him. However, Movant's true complaint appears to be that defense counsel did not consult with him regarding the presentation or extent of the appellate arguments, not that counsel failed to obtain his consent to file an appellate brief. For instance, Movant contends that the "brief devotes less than one page to his argument that the evidence was insufficient to support his conviction on Count One and fails to cite even a single case or law for support. Although [counsel] had the option to file a reply brief, in which he could have rebutted the Government's interpretation of his argument, no reply brief was filed." (D.I. 103 at 26; D.I. 105 at 22) Movant also complains about the fact that the appellate brief did not include the ineffective assistance arguments presented in the instant § 2255 Motion.

These arguments are unavailing. First, after filing a notice of appeal, defense counsel filed a motion in the Third Circuit requesting the appointment of new appellate counsel (D.I. 103 at 44), which the Third Circuit denied. *See United States v. Gray*, No. 09-1080, Clerk Order (3d Cir. June 18, 2009). Therefore, the fact that defense counsel continued to represent Movant on direct appeal does not constitute *per se* ineffective assistance.

To the extent Movant contends defense counsel was ineffective because he did not include in the appellate brief the ineffective assistance of counsel claims contained in his § 2255 Motion, the

12

Court notes that claims of ineffective assistance of counsel are generally not reviewable on direct appeal. *U.S. v. Thornton*, 327 F.3d 268 (3d Cir. 2003). As such, defense counsel's failure to present such claims in the appellate brief does not amount to constitutionally ineffective assistance.

In turn, Movant's contention that defense counsel provided ineffective assistance by failing to provide him with an opportunity to review the appellate brief is similarly unavailing. Claims of ineffective assistance of appellate counsel are evaluated under the same *Strickland* standard applicable to trial counsel. *See Lewis v. Johnson*, 359 F.3d 646, 656 (3d Cir. 2004). Although an attorney must consult with his client with respect to the **decision** to file an appeal, an attorney does not have a *per se* constitutional duty to provide the appellate brief to his client for review. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983). Here, Movant does not identify any argument he would have added or altered had he been given the opportunity to review the appellate brief prior to its filing. Consequently, he cannot demonstrate a reasonable probability that the outcome of his appeal would have been different had he reviewed appellate brief prior to its filing.

Finally, Movant's assertion that defense counsel was ineffective for failing to provide further support for the insufficient evidence argument contained in the appellate brief, and for failing to file a reply brief, also fails to warrant relief. An attorney's decision about which issues to raise on appeal are strategic, and an attorney is not required to raise every possible non-frivolous issue on appeal. *See Smith v. Robbins*, 528 U.S. 259, 272 (2000); *Jones v. Barnes*, 463 U.S. 745 (1983). Notably, Movant does not identify any legal authorities he believes defense counsel should have cited for the insufficient evidence argument, and he does not explain the content of any rebuttal he believes defense counsel should asserted in a reply brief. Given these lapses, Movant cannot show how his appeal would have turned out differently had defense counsel provided additional arguments or filed

13

a reply brief. In short, Movant has failed to establish that counsel's actions in this respect denied him effective assistance.

For all of these reasons, the Court will deny Movant's claim that defense counsel provided ineffective assistance on appeal.

### B. Claim Three: Government's Failure to Provide "Jason's" Text Messages Violated *Brady*, *Giglio*, the Jencks Act, and Fed. R. Crim. P. 26.2

In Claim Three, Movant asserts that the Government violated *Brady v. Maryland*, 373 U.S. 83 (1947), *Giglio v. United States*, 405 U.S. 150 (1972), the Jencks Act, and Federal Rule of Criminal Procedure 26.2 when it failed to turn over the actual text messages sent and received by a government informant called "Jason." "Jason" was the informant who assisted the Government in setting up the October 30, 2006 sting operation. According to Movant, "Jason's" text messages were exculpatory and/or necessary to impeach the government witnesses

In *Brady*, the Supreme Court held that the "suppression of evidence by the prosecution favorable to the accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. Following its decision in *Brady*, the Supreme Court held that the Government has an affirmative duty to disclose exculpatory evidence regardless of the defendant's actions. *See United States v. Agurs*, 427 U.S. 97, 107 (1976); *Kyles v. Whitley*, 514 U.S. 419, 433 (1995). To establish a *Brady* violation, a defendant must demonstrate that: (1) the prosecution either willfully or inadvertently suppressed evidence; (2) the evidence was favorable to the defendant because it was exculpatory or had impeachment value; and (3) the evidence was material. *See Lambert v. Blackwell*, 387 F.3d 210, 252 (3d Cir. 2004). Exculpatory evidence is material if the "evidence could reasonably be taken to

14

put the case in such a different light as to undermine confidence in the verdict." *Kyles*, 514 U.S. at 435. Notably, there is no *Brady* violation where the exculpatory information is available to the defense from other sources in the exercise of due diligence. *See United States v. Perdomo*, 929 F.2d 967, 973 (3d Cir. 1991).

In *Giglio*, the Supreme Court held that *Brady* also requires prosecutors to disclose favorable and material evidence affecting the jury's judgment of a crucial prosecution witness' credibility. *See Giglio*, 405 U.S. at 154. However, "[t]he purpose of requiring disclosure of impeachment information is not to assist the defense in a general pretrial investigation, but only to give the defense an opportunity to effectively cross-examine the Government's witnesses at trial." *United States v. Giampa*, 904 F. Supp. 235, 281 (D.N.J. 1995); *see also United States v. Higgs*, 713 F.2d 39, 43 (3d Cir. 1983).

Finally, the Jencks Act and Federal Rule of Criminal Procedure 26.2(a) both provide that, after a government witness testifies, and upon motion by the defendant, the Government must produce "any statement . . . of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified." 18 U.S.C. § 3500(b)(2); Fed. R. Crim. P. 26.2(a). A "statement" is defined as "(1) a written statement made and signed or otherwise adopted or approved by [the witness]; (2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof" that recites "substantially verbatim," and was made contemporaneously with, the witness's statement; or (3) a recording or transcript of grand jury testimony. *See* 18 U.S.C. § 3500(e). "The purpose of a Jencks disclosure is to provide the defendant with an opportunity to review the witness's statements for any possible inconsistencies that he might use to impeach the

witness. Importantly, in light of this purpose, the government has no obligation to produce Jencks material until the witness has testified."[5] *United States v. Maury*, 695 F.3d 227, 248 (3d Cir. 2012).

Contrary to Movant's assertions, he was not legally entitled to *Giglio* material prior to trial, and the Jencks Act and Rule 26.2 only required the Government to provide him with the "Jason"/Shepherd text messages after one of those witnesses testified at trial. Moreover, Movant's bare assertion that Government violated *Brady* by failing to provide a copy of the actual text messages fails to establish that the text messages were exculpatory, that the Government suppressed the evidence, or that the text messages were material. As such, the Court concludes that Claim Three fails to establish a meritorious claim under any of the aforementioned legal authorities.

In addition, Claim Three lacks merit because Movant actually received the content of the text messages between "Jason" and Shepherd during discovery at least two weeks prior to trial through the handwritten notes of Special Agent Eric Miller. (D.I. 117 at 105 (Exh. 6)) According to Special Agent Miller's notes, text messages that "CS" ("Jason") and "RS" (Shepherd) exchanged between October 28, 2006 and October 30, 2006 concerned the logistics of the drug transaction. *Id.* For instance, on October 28, 2006, "Jason" texted "I'm Ready" to Shepherd. Shepherd responded, "What Time," and "Jason" texted "Monday afternoon." (D.I. 117 at 105 (Exh. 6)) The Government also provided Movant with Shepherd's phone records (under the name Darius Lowber, for phone number 610-733-xxxx), which documented the communications between Shepherd, "Jason," and Movant that occurred on October 30, 2006. (D.I. 117 at 107-112 (Exh. 7)) Finally, during his trial testimony, Special Agent Miller explained how, on October 30 2006, he monitored

---

[5]"Despite this limitation, many federal prosecutors routinely turn over Jencks material a few days before the witness testifies." *Maury*, 695 F.3d at 248 n.18.

16

and recorded telephone calls between "Jason" and Shepherd, during which they established further details of the meeting time and drug transaction. Specifically, they discussed the fact that Shepherd's flight from Atlanta, Georgia was scheduled to arrive in Philadelphia on October 30 at approximately 7:30 p.m. (D.I. 117, at 5-6 (Exh. A))

In sum, since the substance of the text messages was provided to the defense prior to trial, the Court denies Movant's contention that the Government's failure to provide a copy of the text messages themselves violated *Brady*, *Giglio*, the Jenks Act, or Rule 26.2.

For all of these reasons, the Court will deny Claim Three as meritless.

### IV. PENDING MOTIONS

During the pendency of the proceeding, Movant filed two "Motions for Miscellaneous Relief Pursuant to Fed. R. Civ. P. 6(e)," asking the Court to take notice of certain page number corrections. (D.I. 106; D.I. 108) The Court will grant these motions. In addition, the Court will grant the Government's Motion to Amend/Correct Certificate of Service. (D.I. 113)

### V. EVIDENTIARY HEARING

Section 2255 requires a district court to hold a prompt evidentiary hearing unless the "motion and the files and records of the case conclusively show" that the Movant is not entitled to relief. 28 U.S.C. § 2255; *see also United States v. Booth*, 432 F.3d 542, 545-46 (3d Cir. 2005); *United States v. McCoy*, 410 F.3d 124, 131 (3d Cir. 2005); Fed. R. Civ. P. 8(a), 28 U.S.C. foll. § 2255. As previously explained, the record conclusively demonstrates that Movant is not entitled to relief. Therefore, the Court will deny Movant's § 2255 Motion without an evidentiary hearing.

17

## VI. CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2255 motion must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011). A certificate of appealability is appropriate only if the movant "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The movant must "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court concludes that Movant's claims lack merit, and is persuaded that reasonable jurists would not find this assessment debatable. Therefore, the Court will not issue a certificate of appealability.

## VII. CONCLUSION

For all of the foregoing reasons, the Court will dismiss Movant's 28 U.S.C. § 2255 Motion to Vacate, Set Aside, or Correct Sentence, without an evidentiary hearing. Additionally, the Court will not issue a certificate of appealability. The Court will issue an appropriate Order.